**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WESTERN BANK AND OFFICE SUPPLY COMPANY, Respondent.**

**No. 6366.**

United States Court of Appeals
Tenth Circuit.

Oct. 28, 1960.

Melvin J. Welles, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., were with him on the brief), for petitioner.

Edward E. Soule, Oklahoma City, Okl. (Roy C. Lytle and Lytle, Johnston & Soule, Oklahoma City, Okl., of counsel, were with him on the brief), for respondent.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The petition of the National Labor Relations Board, brought pursuant to Section 10(e) of the National Labor Relations Act,[1] seeks enforcement of its order requiring respondent, Western Bank and Office Supply Company, to reinstate employee Richard Cabrera without loss of pay and containing the usual provisions designed to assure compliance with the Act. The Board found that Western violated Section 8(a) (3) of the Act[2] by discharging Cabrera for union activities. Western resists the petition on the sole ground that the findings and order are not supported by substantial evidence on the record considered as a whole.

Western, an Oklahoma City printing firm, employed Cabrera as a multilith operator in November, 1957, and discharged him on November 21, 1958. The circumstances of the discharge control the disposition of the case.

We must, on an examination of the entire record, determine whether the Board's findings are supported by substantial evidence.[3] The Board affirmed and adopted the findings of the Trial Examiner.[4] Consideration of the report of the Trial Examiner causes us to comment that such report is more an argumentative and partisan justification of the findings than a dispassionate and

---

1. 29 U.S.C.A. § 160(e).

2. 29 U.S.C.A. § 158(a) (3).

3. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456; National Labor Relations Board v. Midwestern Instruments, Inc., 10 Cir., 264 F.2d 829, 830, certiorari denied 360 U.S. 932, 79 S. Ct. 1451, 3 L.Ed.2d 1545.

4. The Board's Decision and Order are reported at 125 NLRB No. 62.

lucid determination of the pertinent facts.

Cabrera, the discharged employee, testified that on the morning of November 21, 1958, Bush, the plant superintendent, and Bennitt, the sales manager, told him of the anticipated sale of one of two multilith machines and asked him to switch good parts from the machine proposed for sale to the one expected to be retained and to do the work "some time during the next week or two." Shortly after lunch that day, according to Cabrera, Bush asked him to go to another printing plant, American-Bond Printing & Lithographing Company, at which the Amalgamated Lithographers of America was on strike, and do some work there. Cabrera said that he could not do it and showed Bush his union card. Bush replied, "Oh, no; not you too?" and walked away. About 5:00 o'clock Bush called Cabrera to his office and ended his employment saying, "Now, if work picks up we will try to pick you back up.", but "Don't count on it, because I can't promise you anything." Several days later Bush wrote a letter to Cabrera stating that the reason for the discharge was lack of work.

Testifying for the employer, Bush and Bennitt both placed the incident relating to the work at American-Bond and the display of the union card by Cabrera as occurring on November 14, and they are corroborated by Gaines, the operator of American-Bond, who stated that he could fix the date because the union struck at his plant on November 13 and he talked to Bennitt about the loan of an employee on the next day.

Bush became superintendent for Western about October 1, 1958, and was directed to improve production by the elimination of unproductive and inefficient personnel. In the period October 14—December 10 five employees, including Cabrera, were discharged and two

were laid off. Bush said that he discharged Cabrera because of "low productivity and unsatisfactory work," not because of union membership. He further testified that the decision to discharge Cabrera was made the first week in November and that he decided to keep Cabrera on for another two weeks because of some unfinished work. Bush explained his letter giving lack of work as the reason for discharge as a desire not to hurt Cabrera's chances of obtaining other employment.

Except for the incident involving Cabrera, there is no intimation in the record of any anti-union feeling or conduct on the part of Western. While it had no union contract, eight of its twenty-two employees were union members. In November, 1958, Bush requested Myers, a Western employee and union member, to do work for a struck printing plant. Myers refused because of his union membership and no disciplinary action was taken against him.

There is no direct evidence of any discrimination by the employer to discourage membership in any labor organization. The case for the Board rests entirely on circumstances and the reasonable inferences to be drawn from them. Granting the right of the Examiner to pass on the credibility of witnesses and to accept the testimony of Cabrera instead of that of the three witnesses who disagreed with him, the fact remains that the finding of discrimination is based on the disclosure of union membership, an impulsive statement and query by the superintendent, and discharge on the same day. This is not enough.

█ The Act proscribes the right to hire and fire only when it is employed as a discriminatory device.[5] Discrimination may not be inferred from the fact that the discharged employee was a union member.[6] The purpose or motivation of

5. 29 U.S.C.A. § 158(a) (3).

6. National Labor Relations Board v. Wagner Iron Works and Bridge, Structural

& Ornamental Iron Workers Shopmen's Local 471 (AFL), 7 Cir., 220 F.2d 126, 133, certiorari denied 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850.

the employer is controlling,[7] and the presence or lack of anti-union background is pertinent in a determination thereof.[8]

■ In the instant case there is no evidence of any union activity by Cabrera other than membership. The employer made no threat, exercised no coercion, and said nothing derogatory of any union, any union member or any union activity. At the most the circumstances relied on by the Board give rise to nothing more than suspicion or surmise.[9] They do not amount to substantial evidence from which a reasonable inference may be drawn. For a discharge to be an unfair labor practice, discrimination rather than suspicion must be established.

■ Recognizing that the Board has the primary function "to find facts, draw inferences, and construe the Act to effectuate its purposes,"[10] nevertheless, we have the "responsibility for assuring that the Board keeps within reasonable grounds."[11] Upon the basis of the whole record, we are convinced that the facts do not establish a discriminatory discharge.

The petition for enforcement is denied.

7. Radio Officers' Union of Commercial Telegraphers Union, AFL v. National Labor Relations Board, 347 U.S. 17, 43–44, 74 S.Ct. 323, 98 L.Ed. 455.

8. Cf. South Tacoma Motor Co. v. National Labor Relations Board, 9 Cir., 207 F.2d 184, 187–188; John S. Barnes Corp. v. National Labor Relations Board, 7 Cir., 190 F.2d 127, 130.

9. Cf. National Labor Relations Board v. Fuchs Baking Co., 5 Cir., 207 F.2d 737, 738–739.

10. National Labor Relations Board v. International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL–CIO, 10 Cir., 272 F.2d 817, 820.

11. Universal Camera Corp. v. National Labor Relations Board, supra, 340 U.S. at page 490, 71 S.Ct. at page 466.