Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 27, PAPER PRODUCTS & MISCELLANEOUS CHAUFFEURS, WAREHOUSEMEN AND HELPERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

No. 62 C 1286.

United States District Court
E. D. New York.

Dec. 3, 1962.

58

Jacques Schurre, New York City, for petitioner.

Cohen & Weiss, New York City, for respondent, by Samuel J. Cohen, New York City.

Alan Perl, New York City, for Local 381.

Poletti Freidin, Prashker & Harnett, New York City, for charging party, by Jesse Freidin, New York City (Murray Gartner, Richard H. Borow, New York City, on the brief).

ZAVATT, Chief Judge.

This is a petition by the Regional Director of the National Labor Relations Board, pursuant to Section 10(*l*) of the National Labor Relations Act (hereinafter referred to as "N.L.R.A."), 29 U.S. C. § 160(*l*), for a temporary injunction against the Respondent (hereinafter re-

ferred to as "Local 27"), restraining it from picketing the premises of Star Corrugated Box Co. (hereinafter referred to as "Star"), of Maspeth, Queens County, New York, and the premises of Pequot Manufacturing Corp. (hereinafter referred to as "Pequot"), of Glendale, Queens County, New York, pending a final disposition by the Regional Labor Board of a charge, now pending before said Board, that the Respondent is engaging in acts and conduct in violation of Section 8(b) (7) (A) of the N.L.R. A., 29 U.S.C. § 158(b) (7) (A).

For the past fifteen to twenty years, employees of Star and Pequot have been represented by two labor unions as their respective bargaining agents. The inside employees have been represented by Local 381, International Brotherhood of Pulp, Sulphite & Paper Mill Workers, AFL-CIO (hereinafter referred to as "Local 381"). The outside employees, i. e., truck drivers and helpers have been represented by the Respondent, Local 27. Each of these Unions has negotiated contracts simultaneously not only with Star and Pequot but also with approximately twelve to fourteen other employers engaged in the same type of manufacturing within the New York Metropolitan Area. All contracts so negotiated by both Unions have always terminated on the same date. Contract negotiations by each Union have been conducted by and between the several employers, on the one hand, and the officers of each Union and a negotiating committee of the inside or outside employees of all of said employers, on the other hand. Such negotiations, therefore, have been joint. But separate contracts have been entered into between each such employer and each of said Unions.

The last contracts between all of said employers and each of said Unions expired August 31, 1962. Shortly before that date, each Union began negotiations with all of said employers looking toward new contracts. This petition relates only to the contract entered into between Local 381 and Star and Pequot. Numerous joint conferences were held with said employers by the President of Local 381, Mr. Cianciulli, its Vice President, Mr. Capese, and a twenty member employees' negotiating committee, five of whose members were Local 381 member employees of Star. Mr. Cianciulli had represented Local 381 in the negotiation of such contracts with said employers for over a period of approximately fifteen years. Star was represented by Henry F. Bayges, its Vice President, who similarly had so represented Star in negotiating such contracts with Local 381 over a period of many years.

Agreement was reached during the latter part of September 1962. The contract so negotiated resulted in increased and additional benefits to all of the inside employees of all of said employers. The conclusion of negotiations was marked by what witnesses have described as a little celebration on the part of all of those who had participated, including the members of the employee negotiating committee. One of these members, Anthony Legotti (now a leader of the dissident group of Star employees) joined in the festivities and admitted on the stand during the hearing on this petition that the contract so negotiated was a fair contract.

Nevertheless, at a meeting of Local 381 member employees held on Saturday, October 13, 1962, a vote was taken. It is not clear exactly on what question the vote was taken, i. e., whether to reject the contract and strike or merely to strike. In either event, the vote was 141 to 79, either against acceptance of the contract and in favor of a strike or merely in favor of a strike. Article XV of the Constitution of International Brotherhood (of which Local 381 is a member) provides, in part, as follows:

"Strikes and Lockouts

"SECTION 1. Any local having a grievance so serious that a strike appears to be necessary shall call a meeting, which has been well advertised, for the purpose of taking action on the same. It will require a two-thirds vote of all votes cast by secret ballot to carry a vote on strik-

ing. This vote to become operative must receive the endorsement of the International Executive Board. To declare a strike off, after having been legally voted upon and endorsed by the Executive Board, a local must receive the approval of the International President-Secretary.

"SEC. 2. The Executive Board shall, in every case, exhaust every honorable means to settle trouble, even to submitting the same to a board of arbitration, should it be deemed advisable, before endorsing a strike.

"SEC. 3. The President-Secretary, with the approval of the International Executive Board, shall have the power to order any local or all locals out on strike, when, in the opinion of the International Executive Board, such a move is necessary. But the President-Secretary shall first exhaust every effort in his power to settle the trouble, or impending trouble, even to submitting the same to arbitration, should the International Executive Board deem it advisable."

Article I, Section 4, provides in part:

"In the International Brotherhood * * * alone is vested power to establish subordinate local unions, and members must obey its mandates at all times and under all circumstances."

On the afternoon of Saturday, October 13, 1962, the President of the International Brotherhood sent a telegram to Bernard Cianciulli, the President of Local 381, to the effect that " * * * the Executive Board [of the International] will not sanction a strike by the members of Local #381 employed by the Star Corrugated Company * * *."

On October 14, 1962, Local 381, by Bernard Cianciulli, executed several contracts with such employers, including Star and Pequot, all having identical terms theretofore agreed upon. On the following day several employees of Star began to picket the premises of Star. At some later date they also began to picket Pequot. The picketing of Pequot appears to have ceased the day before this Court signed an order to show cause with a temporary restraining order. The picketing of Star continued until that order was signed.

Local 27 appears to have come on the scene, in connection with this picketing, about two days after the picketing commenced. It made a demand upon Star for recognition of Local 27 as the bargaining agent of the inside employees, claiming that it had signed up about 100 of such Star employees. On October 15, 1962, approximately 97 inside employees of Star, acting through what they termed a "Star Box Decertification Committee," filed with the Regional Board a petition to decertify Local 381 as their bargaining representative. On November 20, 1962, the Board dismissed this petition:

"It does not appear that further proceedings are warranted inasmuch as the collective bargaining agreement currently in effect constitutes a bar to investigation of representatives at this time. * * * "

Local 27 began to picket Star on October 23 and Pequot on October 31 to compel those employers to recognize it as the bargaining representative of inside employees. Nothing in the record even suggests that an object of this picketing was related in any way to its negotiations in behalf of the outside employees.

On October 29, Local 27 filed a charge with the N.L.R.B. alleging that Star had violated Sections 8(a) (1, 2) of the N.L.R.A., 29 U.S.C. § 158(a) (1, 2).

"On and after October 6, 1962, the employer interfered with, restrained and coerced its employees in the exercise of their rights under Section 7 of the National Labor Relations Act and contributed support to Local 381, International Brotherhood of Pulp, Sulfite and Paper Mill Workers, AFL-CIO in that the employer attempted to influence the employees to vote to accept contract proposals and subsequent to the vote

attempted to force employees to change their votes from a vote in favor of a strike to a vote in favor of 'no strike' and in that the employer signed a purported collective bargaining agreement with Local 381 after having been advised that the majority of employees of the employer had voted to reject such a contract."

On November 21, 1962, the Board refused to issue a complaint on these charges:

"As a result of the investigation, it appears that, further proceedings are not warranted at this time. The evidence adduced in support of the charge does not tend to establish that the above-named Company unlawfully attempted to influence its employees to vote to accept contract proposals, nor that it attempted to force employees to change their votes from a vote in favor of a strike to a vote in favor of 'no strike', as charged. Further, it appears that on October 14, 1962, the company did, as alleged, sign a collective bargaining agreement with Local 381, International Brotherhood of Pulp, Sulphite & Paper Mill Workers, AFL-CIO, and although it may have been informed that a majority of its employees had voted to reject such a contract, it nevertheless executed such an agreement at a time when the said Local 381 represented the employees of the company in accordance with the provisions of Section 9(a) of the National Labor Relations Act, and in circumstances in which it could not be assumed or inferred, that the authority of Local 381 to make an agreement had been revoked or withdrawn by the employees. I am, therefore, refusing to issue complaint in this matter."

Thereupon, Benjamin M. Pastrana (who had signed the decertification petition in behalf of the "Star Box Decertification Committee") and other employees of Star moved in the United States District Court for the Southern District of New York (62 Civ. 3801) to restrain the "giving any effect to, enforcing, or otherwise putting into operation a collective bargaining agreement executed between Local 381 and Star." This motion was denied by Judge MacMahon in a memorandum opinion dated November 20, 1962, to which reference is hereinafter made.

On November 21, Local 27 filed a notice of appeal from Judge MacMahon's order and presented to Judge Hays of the Court of Appeals of this Circuit an order to show cause for a temporary injunction restraining Local 381 and Star from giving any effect to the contract and for an order of preference in the hearing of their appeal. After argument Judge Hays denied the application *in toto* and refused to sign the proffered order to show cause.

Star filed a charge with the N.L.R.B. on November 19 alleging that Local 27 was engaging in an unfair labor practice in violation of Section 8(b) (7) (A) of the N.L.R.A., 29 U.S.C. § 158(b) (7) (A), which provides that it shall be an unfair labor practice for a labor organization:

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

"(A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title."

Section 10(*l*) of the N.L.R.A., 29 U.S.C. § 160(*l*) provides in substance that whenever a charge is made that one is engaged in an unfair labor practice in violation of § 8(b) (7) of the N.L.R.A. and, after preliminary investigation, the officer or regional attorney, to whom the matter is referred, has reasonable cause to believe that the charge is true, he shall petition an appropriate United States District Court for such injunctive relief as the court deems just and proper. The policy underlying this Section of the N.L.R.A. is to afford a means to preserve issues for the determination of the N.L.R.B. (as provided by the N.L.R.A.) in order to avoid injury to the policies underlying the Act pending final adjudication of labor disputes by the N.L.R.B. McLeod v. Local 810, International Bhd. of Teamsters, 182 F.Supp. 552 (E.D.N.Y.); McLeod v. Local 239, International Bhd. of Teamsters, 179 F.Supp. 481 (E.D.N.Y. 1960); Douds v. International Bhd. of Teamsters, 139 F.Supp. 702 (S.D.N.Y. 1956). The only question for the District Court, on being presented with such a petition, is whether the Regional Director was correct in finding that there was reasonable cause to believe that there has been an unfair labor practice and a reasonable probability that the respondent's activities will be held to be illegal. The quantum of proof required of the Regional Director is only that sufficient to support his initial determination of belief that reasonable cause exists for him to believe that the charges against the respondent are true. It is not necessary at this juncture for the court to determine the ultimate truth or the falsity of the charges alleged; nor need the N.L.R.B., at this stage of the proceedings, have determined such ultimate truth or falsity. Greene v. Bangor Bldg. Trades Council, AFL-CIO, 165 F.Supp. 902 (D.Me.1958); Sperry v. Building and Construction Trades Council, 131 F.Supp. 36 (W.D.Mo.1955). The action of the District Court on such a petition is not a judgment on the merits. Douds v. N. Y. Local Union 10, etc., 120 F.Supp. 221 (E.D.N.Y.1954). The ultimate determination of the truth or falsity of the charges rests with the N.L.R.B. and the appropriate Circuit Court of Appeals on review of the Board's action.

The relevant legal authorities appear to support the Regional Director's initial determination of reasonable cause to believe that the respondent's conduct in this matter will be held illegal. In dealing with such problems the Board has developed its contract-bar rule which provides that the existence of a collective bargaining agreement for a period of less than three years will bar the holding of a representation election for the full duration of the contract; contracts having longer fixed terms will be treated for bar purposes as three year agreements and will preclude an election for only their initial three years. General Cable Corp., 139 N.L.R.B. No. 11, November 19, 1962. In the General Cable case the Board, in extending the contract bar period from two to three years, explained the basis of the rule as follows:

> "Other elements offsetting the arguments against a further one-year delay are recent developments in the labor movement, in Federal labor legislation, and in the labor law handed down by the Supreme Court, all brought sharply into focus since the Board's 1958 determination, together with economic developments resulting from unemployment, the international setting, and technological changes, which tend to complicate and unsettle labor-management relations. Compositely, all these factors serve to stress the efficacy of collective agreements, the need to respect their provisions, the desirability of discouraging raids among unions, the wisdom of granting relief to employees to assist them in eradicating major causes of discontent arising within their own institutions and from their relations with the employers, and the impera-

tive for long range planning responsive to the public interest and free from any unnecessary threat of disruption * * *."

Section 8(b) (7) of the N.L.R.A. provides that recognition picketing of the type here involved may be lawful notwithstanding the lawful recognition of Local 381 by Star if a question of representation may be raised under § 9(c) of the N.L.R.A. The Regional Director has in this case determined that no such question of representation exists not only by its seeking of this injunction but also by its specific dismissal of the decertification proceeding hereinabove referred to.

The existence of a question of representation hinges on the validity of the contract entered into between Star and Local 381 on October 14, 1962. If the contract is invalid, as respondent alleges, then the contract-bar rule can not preclude the holding of an election or bar recognition picketing. Respondent's arguments of invalidity are based on the alleged failure of ratification of the agreement by the membership of Local 381, the alleged lack of authority of the officers of Local 381 to enter into the contract in the face of the 141–79 vote of the membership on October 13, 1962, specifically rejecting the proposals embodied in the contract. All of the legal arguments raised by respondent were considered by the Honorable Lloyd F. MacMahon of the Southern District of New York in his decision, hereinabove referred to:

"Plaintiffs contend that the Union's execution of the contract, despite its rejection by a majority of Star's employees, constitutes a breach of duty imposed by the National Labor Relations Act to represent the plaintiffs fairly and equitably. Plaintiffs concede, however, that they have no authority to support their contention. They rely on analogies to Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) and Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048

(1953). Those cases clearly deal with charges of discriminatory action and have no application here where no discrimination, invidious or otherwise, is even claimed. See Cunningham v. Erie R. R., 266 F.2d 411 (2 Cir., 1959). Moreover, it is undisputed that Local 381 was the statutory bargaining representative. As such, the authorities would indicate that it had a right to enter into the agreement with Star despite rejection by a majority of Star's employees. Midland Rubber Corporation, 108 N.L.R.B. 930 (1954); Texas Company, 112 N.L.R.B. 164 (1955); Appalachian Shale Products Company, 121 N.L.R.B. 1160 (1958)." Pastrana v. Folding Box, Corrugated Box and Display Workers Local 381, 212 F.Supp. 639 (S.D.N.Y.1962).

Judge MacMahon's opinion appears more than sufficient to support the legal segment of the Regional Director's finding of reasonable cause to believe a violation has occurred. However, a few comments by way of exegesis may be appropriate.

■ The argument based on failure of ratification of the agreement by the membership of Local 381 would not appear to be tenable in light of the holding of the Board in Appalachian Shale Products Co., 121 N.L.R.B. 1160, 1162–63 (1958) in which the Board held that failure of ratification prevents a contract from serving as a bar only where the contract contains a written clause specifically requiring ratification as a condition precedent to validity. It is not disputed that the agreement signed between Star and Local 381 did not contain such a ratification provision and that none of the prior contracts between Star and Local 381 were so conditioned.

The alleged lack of authority presents a question a bit more complex, involving a mildly anomalous treatment of well established agency principles. In Midland Rubber Corp., 108 N.L.R.B. 930 (1954), before the actual signing of the contract, a petition in opposition to the

execution of the proposed contract, signed by a majority of the union-membership employees, was handed to the Union representatives. Notwithstanding these objections, the President of the Union signed the contract. The Board held the contract valid for contract-bar purposes.

" * * * In these circumstances, we see no warrant, as does our dissenting colleague, for inquiring into the disagreements among the employees as to the precise economic demands that should be made upon the Employer by the duly selected majority representative or by the regularly chosen officers of the Union. Indeed, the manner in which employees resolve disagreements caused by conflicting interests within the limits of any appropriate bargaining unit are beyond the scope of the Board's authority." 108 N.L. R.B. at 931.

We have here a rejection of the view that the officers of the Union are limited as agents to do only that which the membership has specifically authorized, based no doubt on the desire to avoid rendering more difficult the bargaining process by constant inquiries into the representatives' authority. Operating Engineers Local No. 3, 123 N.L.R.B. 922, 932 n. 19 (1959); Quaker State Oil Refining Corp., 121 N.L.R.B. 334 (1958), aff'd 270 F.2d 40 (3rd Cir., 1959), cert. denied 361 U.S. 917, 80 S.Ct. 261, 4 L.Ed. 2d 185 (1959); American Brake Shoe Co., 116 N.L.R.B. 820, 834 (1956) rev'd on other grounds, 244 F.2d 489 (7th Cir., 1950). Coupled with this rejection of one agency principle we have the adoption of another, that of apparent authority, to buttress the same policy result. In several cases the Board has found that the negotiating representatives had at least apparent authority to bind their unions, and this would seem to be sufficient for contract-bar purposes. See The Texas Co., 112 N.L.R.B. 169 (1955); Operating Engineers Local No. 3, supra.[1]

This memorandum constitutes the Court's findings of fact and conclusions of law. The petition is granted. Settle an order consistent herewith.

---

1. Although counsel did not argue the question of the legal significance of joint negotiations between the several employers and Local 381, it is within reason to suggest that this pattern of negotiation might require acceptance of the results thereof by the Local 381 employees of Star. Lever Bros. Co., 96 N.L.R.B. 448 (1951). Cf. N. L. R. B. v. Sightseeing Guides and Lecturers Union Local 20076 of Greater New York, AFL-CIO (2d Cir., 1962), 310 F.2d 40.