**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**THOMPSON TRANSPORT COMPANY, Inc., Respondent.**

**No. 9879.**

United States Court of Appeals
Tenth Circuit.

Jan. 29, 1969.

Rehearing Denied March 21, 1969.

Edward Wall, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Frank H. Itkin and Mitchell L. Strickler, Washington, D. C., Attorneys, on the brief), for petitioner.

William G. Haynes, Topeka, Kan. (Lillard, Eidson, Lewis & Porter and O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., Charles N. Henson, Peter F. Caldwell, Roscoe E. Long, R. Austin Nothern and Brock R. Snyder, Topeka, Kan., on the brief), for respondent.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

This case reaches us through petition of the National Labor Relations Board under section 10(e) of the National Labor Relations Act for enforcement of a remedial order made June 21, 1967, and premised on a Board decision that Thompson Transport Company (Company) had violated §§ 8(a) (1) and 8(a) (5) of the Act. The Board found that the Company violated § 8(a) (1) by threatening employees that it might close its Phillipsburg, Kansas, terminal if the employees chose union representation and § 8(a) (5) and (1) of the Act "by closing the terminal without prior notice to, or bargaining with the Union [1] concerning its decision to close the terminal and the effect of the closing upon the employees" The Company's resistance to enforcement asserts:

(1) That the Board's certification of the Union was invalid.

(2) That there is not substantial evidence on the record as a whole to support the Board's finding that the Company violated section 8(a) (1) of the Act.

(3) That there is not substantial evidence on the record as a whole to support the Board's finding that the Company violated section 8(a) (5) and (1) of the Act.

(4) That the Board's remedy as ordered does not effectuate the purposes of the Act.

### The Board's Certification

The Company, a common carrier by truck of petroleum and related products, maintained terminals at McPherson and Phillipsburg, Kansas. On November 9, 1965 the Union filed a petition under § 9(c) of the Act for a representation election of the Company's employees at the Phillipsburg terminal. A full hearing was held on the petition and as a result thereof the Regional Director issued his Decision and Direction of Election which, inter alia, found Willis Hodge to be an employee of the Company rather than an independent contractor as argued by the Company and properly included within the requested bargaining unit.[2] Thereafter the company filed a petition with the Board to review the Director's decision. The Board on Decem-

---

1. Truck Drivers Local Union No. 696 (Teamsters).

2. "All drivers, mechanics, and servicemen at the Phillipsburg, Kansas terminal of Thompson Transport Co., Inc., excluding office-clerical employees, and professional employees, guards and supervisors as defined in the Act."

ber 28, 1965 issued a telegraphic order denying the petition

as it raises no substantial issues warranting review except as to the status of the leased driver [Hodge]. As such issue can best be resolved by the challenge procedure, the decision and direction of election is hereby amended to permit the leased driver to vote subject to challenge.

Pursuant to the Board's order the election was held on December 29, 1965 in which nine votes were cast, five of which, including that of Hodge, were challenged. Thereafter the Regional Director conducted an investigation in respect to the challenged votes, and on January 28, 1966 determined that Hodge's ballot should be opened and counted.[3] The Company did not petition the Board for review of this determination and the Board in noting that no objections had been filed to the Regional Director's report within the time provided for in its Rules and Regulations § 102.67(b), 29 CFR 102.67(b),[4] adopted the Regional Director's findings and certified the Union as the duly elected representative of the Company's employees. At the unfair labor hearing the Company sought to relitigate the status of Hodge; however the Trial Examiner sustained General Counsel's objection thereto

on the basis of the Board's well established policy not to relitigate in an unfair labor practice proceeding such as this, issues which were or could have been litigated in a prior related representation proceeding absent newly discovered or previously unavailable evidence.

■ In NLRB v. Ideal Laundry & Dry Cleaning Co., 10 Cir., 330 F.2d 712, this court held that when an employer had not been granted an opportunity for a full hearing during the interlocutory administrative procedures on the issue of the appropriateness of the bargaining unit such issue was open in the unfair practice hearing and thereafter on review in this court. The fundamental of *Ideal* is simple and basic—due process in an administrative hearing requires an opportunity to be fully heard upon any issue that is determinative of the rights of the parties and when that opportunity is denied at the interlocutory level no finality can be accorded the determination there made. But this principle has not been abused by the Board in the case at bar. Although the Company did seek and obtain review of the Regional Director's determination of the appropriate unit the Board acted well within its discretion in holding that the issue of Hodge's status could best be determined through the challenge procedure. It is quite apparent that the validity of Hodge's vote might have had no effect upon the outcome of the election and thereafter the Company might have had no further interest in his inclusion in the unit. In any event the Board procedures provided full opportunity for review of the Director's decision to count the Hodge vote and the Company did not seek such review. To continue the issue as appropriate in the unfair practice hearing would be but to nullify the effectiveness of § 102.67(b) and violate the cautionary words of the Supreme Court that " * * * courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54.

■ We hold, as did the First Circuit in NLRB v. Rexall Chemical Co., 370 F.2d 363, that the Company's failure to

---

3. The Director sustained the Company's challenge to ballots cast by Carl Walters, Darrell Humbarger, Harlan Mason and Boyd McNulty. This left the Union with three votes out of five counted.

4. Section 102.67(b) provides that
 The decision of the regional director shall be final: *Provided, however,* That within 10 days after service thereof any party may file eight copies of a request for review with the Board in Washington, D. C.

exhaust administrative procedures as to Hodge's status precludes review of that issue in this court.[5]

### The Section 8(a)(1) Violation

It is a basic violation of § 8(a)(1) for an employer to interfere with employee organizational activity by a coercive threat to close his plant. Irving Air Chute Co. v. NLRB, 2 Cir., 350 F.2d 176; cf. Textile Workers Union of America v. Darlington Mfg. Co., 380 U.S. 263, 274 n. 20, 85 S.Ct. 994, 13 L.Ed.2d 827. The core of the unfair labor practice lies, however, in the element of coercion and does not extend to a total restriction upon argumentative discussion of the effect of unionization upon the economic health of the company. The latter is protected activity under section 8(c) of the Act. J. S. Dillon & Sons Stores Co. v. NLRB, 10 Cir., 338 F.2d 395. The primary responsibility of determining whether particular utterances are to be construed as threats or mere expressions of opinion lies with the Board, Betts Baking Co. v. NLRB, 10 Cir., 380 F.2d 199, 202; NLRB v. McCormick Concrete Co. of S. C., Inc., 4 Cir., 371 F.2d 149, and its decision will not be disturbed on appeal unless the record as a whole does not reveal substantial evidence in support thereof, North American Rockwell Corp. v. NLRB, 10 Cir., 389 F.2d 866.

In the case at bar the Board bases its finding principally upon a statement made by the Company's terminal manager to employee Hodge that if "the union was voted in that he would or that they would [or] might close the terminal down."[6] This statement, viewed in total isolation, dictates no particular inference and under some circumstances might not justify a finding of an unfair labor practice. See J. S. Dillon & Sons Stores Co., supra. However the Board properly could and did consider the incident in light of the Company's total course of conduct and when so viewed this statement need not be deemed as an isolated statement to a single employee which would not in itself justify a finding of an unfair labor practice.

The Union attempted to organize the employees at the Company's McPherson terminal in 1963 but was met by conduct on behalf of the Company which resulted in the Board issuing a consent order against the Company. It is not our or the Board's function to relitigate the propriety of this earlier conduct but it was proper for the Board in considering the intended effect of Wise's statement to Hodge to take administrative notice of the fact that during that organization campaign the Company not only threatened its employees with reprisals in the event they selected the Union but coupled such threats with statements to its employees that it might be forced to close the terminal. The Company's president testified in the instant case that the Company's general attitude toward unionization had not changed during the intervening years. And, indeed, Hodge had been re-employed only after he "promised [he] wouldn't start a union * * * [if he] could go back to work."

Substantial evidence supports the finding of an 8(a)(1) violation.

### The Section 8(a)(5) Violation

The Board decision, upsetting the finding of the Trial Examiner that the Company had closed the Phillipsburg terminal because of a discriminatory motive violative of § 8(a)(3) of the Act, determined that the Company had acted entirely in compliance with a lawful economic motive in the closing. Never-

---

5. Such review, even in a proper case, of a Board decision of whether a given individual should be classified as an employee or independent contractor is very limited. See NLRB v. United Insurance Co. of America, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083.

6. Wise denied such statement and other statements of similar nature made to an employee who was not a member of the bargaining unit; however credibility determinations "are within the Board's province and not this court's." NLRB v. Seamprufe, Inc., 10 Cir., 382 F.2d 820, 822.

theless, the Board further determined that an 8(a) (5) violation had occurred by the Company's refusal to bargain the decision to and the effects of closing the terminal. It seems apparent and we hold, that the Company, solely motivated by a sound economic reason, had no duty to bargain on the decision to close the terminal. Darlington Mfg. Co., supra; NLRB v. Transmarine Navigation Corp., 9 Cir., 380 F.2d 933. No amount of collective bargaining could erase the economic facts that gave rise to the Company's decision to close and its change of operation could in no way be characterized as a "farming out" or other procedure to continue its operation in a new or different manner. The Company had simply lost the major part of its Phillipsburg business. The duty to bargain concerning the effects of the closing did, however, continue. Transmarine Navigation Corp., supra; NLRB v. Royal Plating & Polishing Co., 3 Cir., 350 F.2d 191.

The reasoning of the Board in its Decision and Order, 165 N.L.R.B. No. 96, and the remedy fashioned therefrom, are so dependent upon the premise that the Company had a dual obligation to bargain both as to decision *and* effect of the closing that we are unable, on the present record, to determine whether the Board did or would consider an 8(a) (5) violation to have occurred independent of the Company's admitted refusal to bargain on the decision to close. We consider it appropriate, therefore, to allow remand of the case to afford the Board opportunity to further consider this aspect of the case, and if it does so, to make appropriate and specific findings and conclusions in the matter.

An appropriate order of the Board limited to the 8(a) (1) violation will be presently enforced on specific request of the Board if filed with the clerk of this court within 30 days; otherwise, enforcement is presently denied without prejudice and the case is remanded to the Board for further consideration in accord with this opinion.