NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ACKER INDUSTRIES, INC., Respondent.

No. 71–1176.

United States Court of Appeals,
Tenth Circuit.

May 16, 1972.

Stephen J. Solomon, Washington, D. C. (Eugene G. Goslee, Acting General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Charles N. Steele and Steven R. Semler, Attorneys, N. L. R. B., on the brief), for petitioner.

Edward E. Soule, Oklahoma City, Okl. (John C. Harrington, Jr., Oklahoma City, Okl., on the brief), for respondent.

Before MURRAH, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This case is before the court upon application of the NLRB for enforcement of its order against Acker Industries, Inc.

Acker Industries is an Oklahoma corporation which manufactures brakeshoes for railroad cars at its Wewoka plant, there employing approximately thirty persons. In April 1969, the company hired Mr. Henry Streater as its sole truck driver. When not busy driving the truck, Mr. Streater was to have helped out where needed in the plant. In July 1969, Streater's interest in union representation became active, and by the end of the month he and a co-worker had gotten all but one of the unit employees to sign authorization cards. On July 29th, the union representative in-

formed Mr. Webb, the company manager, that the union represented a majority of the employees; he demanded recognition and bargaining and suggested a meeting on August 4th. Webb declined recognition and told the union representative to contact the company's counsel. At an employee meeting on August 9th stewards were elected, and it was agreed that if any employee was discharged all would go out on strike.

On August 12th, Streater went to pick up the company truck in Oklahoma City, where it had been undergoing extensive repairs. Earlier, a repair list had been drawn up by Streater at Webb's direction, including among other items repair of the truck's inoperative air horn, a horn in addition to the truck's regular horn. When Streater arrived at the shop in Oklahoma City the horn had not been fixed, and after he and the shop mechanic unsuccessfully attempted to fix it, Streater ordered that it be replaced with a new one. He returned to the company office where he left the bill for all the repairs. On August 13th, Streater was discharged, being told that it was for dissatisfaction with his work and for the unauthorized purchase of the horn. He offered to pay for the horn but was refused.

When the union stewards learned of Streater's discharge they called on Webb for an explanation. Webb replied that the discharge had nothing to do with the union. The following day all but one of the plant employees walked out in protest. Webb refused to reinstate Streater, and the strike continued. On August 26th, the employees tendered an unconditional offer to return to work, but by then they all had been replaced.

On September 29, 1969, the Board's Regional Director in Fort Worth issued a complaint charging that the company's behavior constituted multiple unfair labor practices. A hearing thereon was scheduled for late October, but in the meantime the Board brought an action against Acker Industries in the United States District Court seeking temporary injunctive relief under section 10(j) of the Act, 29 U.S.C. § 160(j), pending final Board action. The relief sought was of essentially the same design as that prayed for in the section 10(b) complaint; specifically, the District Court was asked (1) to order Acker to reinstate Mr. Streater, (2) to order Acker to reinstate the strikers who had been permanently replaced, and (3) to order Acker to recognize and bargain with the union. The United States District Court held a full hearing and later it filed a memorandum opinion in which it was stated that Acker was not guilty of unfair labor practices, and findings to that effect were made. Acker immediately applied to the trial examiner for leave to amend its answer to plead the section 10(j) findings as binding by collateral estoppel or to reopen the record in the section 10(b) hearing just concluded to receive a copy of the memorandum opinion. The trial examiner refused. The Board concluded that the company violated section 8(a) (1) of the Act by threatening its employees with plant closure. It was also found that Streater's discharge and the company's refusal to reinstate the protesting strikers constituted violations of section 8(a) (3), and that the company violated section 8(a) (5) in failing to bargain with the union. The Board's order requires reinstatement of Streater and his co-workers, allows for back pay, and provides for recognition and bargaining.

The respondent argues that the United States District Court's findings, conclusions, and judgment in the section 10(j) injunction action are binding on the Board under the doctrine of estoppel by judgment, citing Gaitan v. United States, 295 F.2d 277 (10th Cir.), and similar cases. It urges that management made no threat of plant closure, that the Board's finding that Streater was discharged because of his union activity is not supported by the record, and that the strikers were not entitled to reinstatement because the strike was not an unfair labor strike. It is further argued that it was inappropriate for the

**652**

Board to have ordered bargaining when, under the Gissel doctrine, Acker was entitled to an election. The Board argues that evidence on the record as a whole substantiates the findings and that the bargaining order was within its remedial authority.

■ Under section 10(j) it is contemplated that a district court grant injunctive relief if the Board establishes reasonable cause to believe that the Act has been violated, and it appears that the remedial purposes of the Act would be frustrated unless relief pendente lite is granted. Angle v. Sacks, 382 F.2d 655 (10th Cir.). This is the purpose of the proceeding, and the extent of the relief which may therein be sought. The respondent asserts that the Board was obligated to accept in the section 10(b) proceedings the District Court's findings in the section 10(j) proceedings and to reach its conclusions accordingly. It is not the doctrine of res judicata that is relied upon; instead, respondent carefully distinguishes between res judicata and collateral estoppel, conceding the inapplicability of the former. See NLRB v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

■ Ordinarily, findings made on motion for preliminary injunction, even though they relate in whole or in part to merits of the case, are not determinative of the issues at a subsequent trial. Bursten v. Phillips, 351 F.2d 616 (9th Cir.); People of Colorado v. District Court, 207 F.2d 50 (10th Cir.). The same rationale applies to determinations in cases such as this. The proceedings under either section 10(j) or section 10(l) are interlocutory and are not final adjudications as to whether an unfair practice has taken place. Lawrence Typographical Union 570 v. Sperry, 356 F.2d 58 (10th Cir); Graham v. Retail Clerks Local 57, AFL–CIO, 188 F.Supp. 847 (D. Mont.1960); Costentino v. Masters, Mates & Pilots, AFL–CIO Local 28, 37 L.C. 65,641 (8th Cir.); NLRB v. Carpenters Local 269, 39 L.C. 66,339 (7th Cir.); NLRB v. Local 74, Carpenters Bhd., 181 F.2d 126 (6th Cir.); NLRB v. Denver Building & Construction Trades Council, supra; Local 74, Carpenters Union v. NLRB, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309 (1951). Of course, it would be chaotic if procedural rules permitted conflicting findings of fact in equivalent hearings on the same issues. Here, however, the hearings are not equivalent, and it is recognized that the section 10(j) injunction hearing has a limited evidentiary scope and limited purpose. It is not intended to determine which litigant should ultimately prevail. Douds v. Local 294, International Bhd. of Teamsters, 75 F.Supp. 414 (N.D.N.Y.1947). It is further recognized that the requisite proof on the basic issues in a section 10(b) hearing is more exacting than in a section 10(j) injunctive hearing. Evans v. International Typographical Union, 76 F.Supp. 881 (S.D.Ind. 1948); McLeod v. Local 27, Paper Products & Misc. Chauffeurs, 212 F.Supp. 57 (E.D.N.Y.1962). While it is true that section 10(j) applications are frequently handled by affidavit, we find no significance in the distinction urged which suggests that section 10(j) applications decided on hearing and briefs should be treated as tantamount to a section 10(b) hearing because there remains a categorical difference between the nature of an injunctive hearing and a definitive hearing on the merits. NLRB v. Knitgoods Workers Union Local 155, 403 F. 2d 388 (2d Cir.). The trial court's findings in the section 10(j) proceeding here concerned are only effective to the extent they support the granting or denial of the interlocutory relief there in issue. They must be so limited because the purpose of the hearing was directed to interlocutory relief only, and the trial court made its findings for that purpose only.

■■ On the issue of a threat of plant closure, the record shows that at the meeting between the union stewards and management personnel concerning Streater's discharge, a shop foreman stated that "the Union could force us to

close our doors." Respondent urges that the statement was not a threat as the examiner and the Board found but a prediction of a possible consequence of unionization. See NLRB v. Casino Corp., 174 NLRB No. 8, 1968–2 CCH NLRB 20,466. It is also argued that the statement was only an isolated event and as such indicates no violative course of conduct. On the record as a whole, we agree. The primary responsibility of determining whether statements are to be construed as threats or mere expressions of opinion lies with the Board, Betts Baking Co. v. NLRB, 380 F.2d 199 (10th Cir.), and the Board's decision will not be disturbed on appeal unless the record as a whole does not reveal substantial evidence in support of the finding. North American Rockwell Corp. v. NLRB, 389 F.2d 866 (10th Cir.). As we noted in NLRB v. Thompson Transport Co., 406 F.2d 698 (10th Cir.): "This statement, viewed in total isolation, dictates no particular inference and under some circumstances might not justify a finding of an unfair labor practice." In view of the fact that the comment was an isolated statement made to two employees after the thrust of the organizational drive, and because there is no evidence linking the statement to a proscribed course of conduct, it cannot justify a finding of a section 8(a) (1) violation. Cf. J. S. Dillon & Sons Stores Co. v. NLRB, 338 F.2d 395 (10th Cir.).

The respondent argues that the Board's finding that Streater was discharged because of his union activity is not supported by the record. The only evidence which could relate to anti-union motivation in discharging Streater, and relied on by the examiner and the Board, was his appearance with union members at two meetings with management. We have carefully examined the record relating to these two meetings, and as indicated above, these are the only incidents in the record which could show any knowledge of Mr. Webb that Mr. Streater was engaging in union activity. The first occasion was on August 4th when the union organizer,

Harvey Christian, met with Mr. Webb, and union recognition was demanded. The meeting was in front of the receptionist's desk in the "front office." There was no union committee selected or elected then or at any other time, contrary to the references made by the examiner and in the Board's brief. Mr. Streater was in the group but in no representative capacity, and was never so identified. He was one of six or seven employees who were present, but who did not participate in the brief discussion with Mr. Webb carried on by the organizer. Mr. Streater was just in the group. The second occasion was on August 11th when Mr. Parker and Mr. Brewer, who had been chosen as stewards, went to see Mr. Webb at his office to demand union recognition. Again Mr. Streater was there among the group of six, but did not participate nor was he identified as having any particular reason for being there. The two employees Parker and Brewer identified themselves as spokesmen for "the people in the shop," and did the talking. Thus there is no evidence that Mr. Webb knew of Mr. Streater's union activity, which was extensive and fully established in the record, before discharging him. The employees who had official or representative positions, who did appear in such capacities in the talks with Mr. Webb, had no action directed against them nor was there any evidence of anti-union activity by Acker being carried on at the time pertinent to Mr. Streater's discharge.

Noting that mere union affiliation is not dispositive of the issue, the trial examiner concluded that the combination of union affiliation and his view of the company's justification for firing Mr. Streater formed sufficient basis from which to infer a violation of sections 8(a)(1) and (3). The National Labor Relations Act does not of course interfere with an employer's right to discharge except when inspired by a discriminatory motive for a purpose proscribed by the Act. NLRB v. Western Bank & Office Supply Co., 283 F.2d 603

**654**

(10th Cir.). In the case at bar the evidence shows that Mr. Streater had been recently employed and did not get along with the shop foreman who had complained he would not do his job, that he sometimes did not follow orders, that he was insolent and discourteous, and that his attitude in general was rather troublesome. The evidence in this connection is extensive. The record also indicates that the unauthorized purchase of the air horn could have been but the culmination of a series of events to precipitate Streater's discharge. No other employees were discharged before the strike. The trial examiner, however, discredited the significance of the company's testimony in this regard, and accordingly concluded that the failure of the evidence produced by the company to support its explanation for the discharge confirmed the inference that the discharge was in violation of the Act. However, the evidence was not deficient, and "the circumstances relied on by the Board are enough merely for suspicion or surmise, and do not amount to substantial evidence on the record considered as a whole." NLRB v. Western Bank & Office Supply Co., 283 F.2d 603 (10th Cir.); NLRB v. Fuchs Baking Co., 207 F.2d 737 (5th Cir.); NLRB v. Citizen-News Co., 134 F.2d 970 (9th Cir.).

The lack of evidence in the record in support of the Board's finding that Mr. Streater was discharged because of union activity is also dispositive of the remaining issues. Because the strike was not an unfair labor practice strike, the company committed no error in permanently replacing the striking employees. NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. Consequently, neither Streater nor the strikers were entitled to reinstatement. The Board concluded that "a bargaining order should issue because respondent's unfair labor practices tend to preclude the holding of a fair election under the standards set forth by the Supreme Court in N.L.R.B.

v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547." The bargaining order is also based upon the assumption that there was an unfair labor practice.

Enforcement is denied.