**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SHAWNEE INDUSTRIES, INC., Subsidiary of Thiokol Chemical Corporation, Respondent.**

No. 7519.

United States Court of Appeals
Tenth Circuit.
June 22, 1964.

Allison W. Brown, Jr., Attorney, National Labor Relations Board (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, on the brief), for petitioner.

William J. Rosenthal, Baltimore, Md. (Richard N. Steed, of Spurr & Steed, Shawnee, Okl., and Earle K. Shawe, Baltimore, Md., Daniel P. Dooley, Philadelphia, Pa., and Joseph K. Pokempner, Baltimore, Md., on the brief), for respondent.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The National Labor Relations Board petitions for the enforcement of its order against Shawnee Industries, Inc. (Shawnee). The Board found that Shawnee had violated § 8(a) (1) and (3)[1] of the National Labor Relations Act, as amended, by refusing to hire four men—Sheets, Hensley, Scott, and Talbot—because of their union activities and by promulgating work rules restricting union solicitation on company property.[2]

Shawnee is engaged, at Shawnee, Oklahoma, in the manufacture of ground support equipment for the Minuteman

Missile program. It was organized in January, 1961, and uses plant facilities formerly occupied by Jonco Aircraft Division of Fairchild Engine and Aircraft Company (Jonco). Jonco worked almost exclusively in the manufacture of tooling and components for the aircraft industry. Lodge 954, International Association of Machinists, AFL–CIO (the Union), had a labor contract with Jonco and had asserted unsuccessfully that such contract was binding on Shawnee.[3]

■ The original charge against Shawnee was filed March 9, 1962, and was amended four times thereafter with the last amendment made April 24, 1962. The amended charges relate back to the time of filing the original charge.[4] Section 10(b) of the Act[5] bars proceedings "based upon any unfair labor practice occurring more than six months prior to the filing of the charge * * *." In the case at bar the statutory period is six months immediately preceding March 9, 1962.

We are concerned first with whether, on the record considered as a whole, substantial evidence sustains the findings of unlawful discrimination in the refusal to hire the four mentioned individuals.

■ Sheets applied for employment on September 11, 1961. He had worked for Jonco from 1954 to 1959 and had received an "A" classification as tooling inspector. He was active in the affairs of the Union and had held the office of vice-president and steward in the Union. Some four weeks after applying, Sheets talked to the Shawnee manufacturing manager and said that he thought he was being blackballed because of union activities. The manager promised to investigate but never reported any results to Sheets. In December, 1961, Sheets and his wife

1. 29 U.S.C. § 158(a) (1) and (3).

2. The Board's decision and order are reported at 140 N.L.R.B. 1451.

3. See International Ass'n of Machinists v. Shawnee Industries, Inc., D.C.W.D.Okl., 224 F.Supp. 347.

4. Radio Officers' Union v. N. L. R. B. 347 U.S. 17, 34, footnote 30, 74 S.Ct. 323, 98 L.Ed. 455.

5. 29 U.S.C. § 160(b).

talked to one Kamp who was in charge of hiring tooling inspectors. Kamp told them that there was a list of people whom top management would not let him hire and that Sheets was on the list. Kamp also said that those on the list were "trouble makers" but denied that union activity was the reason for inclusion on the list. In reply to a question as to why one Humphreys was employed as a tooling inspector, Kamp said that Humphreys "wasn't mixed up in the union squabble." Explanations by Shawnee why Sheets was not hired are not impressive.[6] In our opinion substantial evidence and reasonable inferences therefrom support the finding of unlawful discrimination with respect to Sheets.

Talbot was a Jonco employee from 1954 to 1960, and was a qualified instrument repairman, class "A". He was active in the affairs of the Union and during the pertinent period was its president. His first application for employment by Shawnee was made through the Oklahoma State Employment Commission early in 1961. Another application was made on April 5, 1962, after the first of the charges now under consideration was filed.

In January, 1961, Talbot, as president of the Union, and Hensley called on Willis, the chief executive of Shawnee, to urge recognition by Shawnee of the Jonco labor contract. Statements then made by Willis are urged as proof of anti-union sentiment.[7]

At some undisclosed date not shown to be within the statutory period, Kamp told Talbot that he could not be hired because he was on a list of unemployables. Talbot asked if it was because of union activities and Kamp replied that it was "on account of your work." Talbot did not pursue the matter further until his April, 1962, application.

 We recognize the principle that events occurring outside of the six-month limitation period of § 10(b) "may be utilized to shed light on the true character of matters occurring within the limitations period"; [8] and we agree with the Board that the limitation period begins when the facts of a discriminatory hiring policy first become known to an applicant. The difficulty is that no evidence established discrimination against Talbot within the limitation period. In the circumstances of this case, proof of discrimination against Sheets is not proof of discrimination against Talbot.[9]

 Talbot's April, 1962, application did not revive a prior discrimination, if one could be inferred, which was then barred by the statute.[10] Except for events occurring before the statutory period, the case for Talbot rests on the facts that he was active in the Union and that Shawnee refused to hire him. We said in Rocky Mountain Natural Gas Company v. N. L. R. B., 10 Cir., 326 F. 2d 949, 952, that "active union participation by the most qualified employee is not an impenetrable shield against dis-

---

6. The discriminatory discharge cases hold that discrimination may be found even though valid reasons for discharge exist. See N. L. R. B. v. Jamestown Sterling Corp., 2 Cir., 211 F.2d 725, 726; N. L. R. B. v. Linda Jo Shoe Company, 5 Cir., 307 F.2d 355, 357. A similar rationale applies when there is discriminatory refusal to employ.

7. Shawnee counters the claim of union prejudice by uncontroverted evidence that 124 former Jonco employees had been employed by Shawnee; that at least 10 former officials of the Union have been hired and are working for Shawnee; and that the four persons concerned in these

proceedings represent less than ¼ of 1% of the 1,920 applicants for production jobs that have not been hired by Shawnee.

8. Local Lodge No. 1424 v. N. L. R. B., 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed. 2d 832.

9. We have recently disapproved the "carry-over" intent doctrine. See Rocky Mountain Natural Gas Company v. N. L. R. B., 10 Cir., 326 F.2d 949, 951–952.

10. See Local Lodge No. 1424 v. N. L. R. B., 362 U.S. 411, 416–417, 80 S.Ct. 822; and N. L. R. B. v. Childs Co., 2 Cir., 195 F.2d 617, 621.

charge." We now add that active union participation is not a guaranty of employment even though the applicant is qualified. Some act of discrimination within the statutory period must be shown. We are of the opinion that the Board erred in its decision regarding Talbot.

■ Hensley and Scott are in an even more unfavorable situation than Talbot. In regard to Hensley the only showing is his participation with Talbot in the January, 1961, meeting with Willis. The case for Scott rests on his version of a conversation which he had with the manufacturing manager in June, 1961, well beyond the limitation period. For the reasons stated in the discussion of Talbot we hold that the Board's decision regarding Hensley and Scott cannot be sustained.

The Board held that promulgation by Shawnee of two rules violated § 8(a)(1) because the effect was to prohibit union solicitation. The rules prohibit:

"(Rule 3) Vending, soliciting, or collecting contributions for any purpose at any time on the premises, unless authorized by management."

"(Rule 5) Distributing written or printed matter of any description on the premises unless approved by Personnel."

The theory of the Board is that these rules are presumptively invalid because they interfere with the employees' organizational rights and that Shawnee has failed to rebut the presumption by any showing that they are necessary in order to maintain production or discipline.

■ The parties differ over the meaning and significance of the word "soliciting" in Rule 3. The Board asserts that it applies to union solicitations and Shawnee says that it refers to solicitation of contributions. The announced intent of the maker of the rule would seem to carry the greater weight. An employer may not by rule interfere with employee activities relating to union organization during non-working hours.[11] That principle does not apply here. Nothing more is shown than the adoption of the rules. Neither solicitation nor distribution are absolutely forbidden. They are conditioned upon authorization.

■ The record contains no evidence that the rules were ever used to interfere with any union or any organizational activities; that any request was ever made for the approval of solicitation or distribution activities; that Shawnee ever questioned or denied the right of its employees to solicit support for a labor union or membership in a union; or that the rules were adopted for a discriminatory purpose. We see nothing in the record to sustain an inference that these rules ever have been, or ever will be, used in a forbidden manner. It is presumed that a person obeys the law and discharges the obligations imposed on him by law.[12] Imagined possibilities are not enough. A charge of an unfair labor practice must be based on something more than suspicion.[13] Here the only showing is the existence of the rules. In our opinion the mere promulgation of the rules is not per se a violation of the Act.[14]

Enforcement of the order is denied with respect to the failure to employ Talbot, Hensley, and Scott and with respect to Rules 3 and 5. Otherwise enforcement of the order is granted.

11. See Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 803, 65 S.Ct. 982, 89 L.Ed. 1372; N. L. R. B. v. Walton Manufacturing Company, 5 Cir., 289 F.2d 177, 180.

12. Tobin v. Kansas Milling Co., 10 Cir., 195 F.2d 282, 287.

13. See N. L. R. B. v. Western Bank & Office Supply Company, 10 Cir., 283 F.2d 603, 606.

14. See N. L. R. B. v. United Steelworkers of America, 357 U.S. 357, 363–364, 78 S.Ct. 1268, 2 L.Ed.2d 1383; and N. L. R. B. v. Elias Brothers Big Boy, Inc., 6 Cir., 325 F.2d 360, 362–363.