**AMERICAN SAFETY EQUIPMENT CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1223.

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 17, 1980.

Decided March 3, 1981.

---

Mark W. Atkinson of Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for petitioner.

L. Joseph Ferrara, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, William R. Stewart, Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

American Safety Equipment Corporation (Company) engages in the manufacture, nonretail sale and distribution of automotive restraint systems. The International Association of Machinists and Aerospace Workers, AFL–CIO, sought to organize production and maintenance employees at the Company's Palmyra, Missouri facility. A National Labor Relations Board representation election was held October 29, 1976. The Union lost, and it filed several objections to the Company's conduct during the preelection period. After an investigation, the Regional Director overruled all the Union objections, but nonetheless set aside the election.

The Regional Director based his decision upon two rules in the Company's employee handbook. One rule prohibited "distribution of unauthorized leaflets, papers, or other materials during working hours on Company property." Rec., vol. II, at 301. The other stated that "only the recognized solicitations for charitable organizations and similar activities specifically approved by the Company will be permitted during working hours."[1]  *Id.*  The Regional Director held that the no-solicitation, no-distribution rules constituted an interference with the employees' organization rights.

The Company's request for NLRB review of the Regional Director's decision was telegraphically denied, and a second election was held January 14, 1977. The Union won. The Company objected, claiming section 9(c)(3) of the Act, 29 U.S.C. § 159(c)(3), barred a second election because a valid election had been held in the preceding twelve-month period. The Regional Director overruled the Company's objection

---

1. The Company promulgated the rules in 1968 to regulate solicitations concerning highly controversial political issues at its already unionized California facility. These rules were adopted without modification when the Company began operation of the Palmyra plant in 1976.

and certified the Union as the employees' bargaining agent. The Board denied the Company's request for review of this decision in a written opinion[2] on January 26, 1978, approximately one year after the Union was certified.

No negotiations took place between the Union and the Company during the Union's certification year. Shortly after review was denied by the Board, the Union sent a letter to the Company requesting negotiations. A second Union letter again sought a bargaining meeting and requested pertinent information about Company employees. The Company did not respond to either communication. Subsequently, the Union filed the unfair labor practice charge that is the basis of this appeal, alleging the Company had refused to bargain and to supply requested information. The Board found violations of sections 8(a)(5) and (1)[3] of the Act and directed the Company to bargain with the Union. The Company petitioned this court for review of the Board's order. The Board cross-applied for enforcement.

The Company raises three issues on appeal. It argues 1) that the Board erred in setting aside the first election; 2) that even assuming the Company had an obligation to bargain after the second election, the Company did not illegally refuse to do so during the certification year; and 3) that after the year had expired, its refusal to bargain was based on a reasonable, good faith doubt as to the Union's majority status. We find the first issue dispositive and, therefore, need not reach the other two questions.

The Company is charged with an unfair labor practice for refusing to bargain with the Union. The Company claims that it had no duty to bargain because the Union was defeated in what it contends was a valid first election. Thus, in determining whether the Company committed an unfair labor practice, we must decide if the Regional Director was justified in setting aside the first election.

Congress has given the Board wide discretion in supervising representation elections. *NLRB v. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946). This includes the right to set aside an election in which a party's preelection conduct "reasonably tends to interfere with the voter's free choice," *Independent, Inc. v. NLRB*, 406 F.2d 203, 206 (5th Cir. 1969) (quoting *NLRB v. Laney & Duke Storage Warehouse Co.*, 369 F.2d 859, 864 (5th Cir. 1966)), or unduly influences the election result. *NLRB v. Tennessee Packers, Inc.*, 379 F.2d 172, 180 (6th Cir. 1967). Our review of such a Board decision is limited to determining whether it is supported by substantial evidence on the record considered as a whole. *Harlan # 4 Coal Co. v. NLRB*, 490 F.2d 117, 125 (6th Cir. 1974); *Tennessee Packers*, 406 F.2d at 180. Substantial evidence is "more than a mere scintilla and connotes such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Ann Lee Sportswear, Inc. v. NLRB*, 543 F.2d 739, 742 (10th Cir. 1976).

In this case, the Regional Director conducted a full investigation of the objections made by the Union to the first election. Both the Union and the Company were given ample opportunity to present evidence, including sworn statements from witnesses, on the conduct of the election. The only basis found by the Regional Director for setting aside the first election was the no-solicitation, no-distribution rules in the Company handbook, which was given to every new employee.

The Board has determined that representation elections must occur under "laboratory conditions." *Tennessee Packers,*

---

**2.** The decision is reported at 234 N.L.R.B. 501, 97 L.R.R.M. 1305 (1978).

**3.** These sections provide:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

". . .

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

379 F.2d at 180 (quoting *NLRB v. Blades Manufacturing Corp.*, 344 F.2d 998, 1003 (8th Cir. 1965)). In deciding whether such conditions have been disturbed, rules prohibiting solicitation or distribution during working *hours*, as opposed to working *time*, are presumed to interfere with employees' organizational rights. *See Essex International, Inc.*, 211 N.L.R.B. 749, 86 L.R.R.M. 1411, 1412 (1974). However, an "employer [may] show by extrinsic evidence that, in the context of the particular case, the 'working hours' rule was communicated or applied in such a way as to convey an intent clearly to permit solicitation during breaktime or other periods when employees are not actively at work." *Id.*

In setting aside the election on the basis of the two rules in the handbook, we conclude that the Regional Director erroneously applied the analysis in *Essex* to the facts before him. He recognized that under *Essex* an employer may rebut a prima facie presumption of invalidity by a showing that either the "working hours" rules were *communicated or applied* properly. But he failed to consider the evidence showing proper application in this case. To meet its burden the Company submitted four employee affidavits covering the solicitation issue. The industrial relations manager stated that employees were told their lunchtime and breaktime were their own to do with as they pleased and that employees were well aware the rules on solicitation and distribution applied only to actual working time. He also stated that employees openly engaged in Union activities, including the distribution of Union material during their nonwork time, and were not disciplined or prohibited from doing so. Two other employees stated that material for and against the Union was openly distributed at the plant during nonworking time and that no one was disciplined as a

result. Although as noted by the dissent the Regional Director found only four instances in which employees were specifically informed that the rules only covered actual work time, the evidence clearly establishes that the rules were consistently *applied* properly by the Company. There is absolutely no evidence to the contrary. Furthermore, in overruling Union objections 2, 3 and 5, the Regional Director himself found that "in enforcing its no-solicitation, no-distribution rules, [the Company] did not engage in conduct which would provide a basis upon which the election may be set aside, inasmuch as the investigation failed to disclose that during the lengthy organizational campaign, the Employer enforced such rules disparately and took action only against employees who supported the [Union]." Rec., vol. II, at 298.

■ We agree with the dissent that we cannot choose between conflicting facts or inferences from facts. But here the evidence is uncontroverted that the rules were applied by the Company to permit proper Union solicitation. Consequently, the Company met the burden, imposed by *Essex*, of overcoming the prima facie invalidity of the rules.[4] The Regional Director refused to consider the affidavit evidence presented by the Company. His decision can stand only if the rules are to be considered a per se interference with a representation election. As *Essex* indicates, such rules do not create an irrebuttable presumption. *See also House of Mosaics, Inc.*, 215 N.L.R.B. 704, 88 L.R.R.M. 1428, 1430 (1974). Nor has this court ever held, in reviewing solicitation and distribution rules in a non-election setting, that the mere promulgation of such rules is a per se violation of the Act. *See Groendyke Transport, Inc. v. NLRB*, 530 F.2d 137, 141 (10th Cir. 1976); *NLRB v. Shawnee Industries, Inc.*, 333 F.2d 221, 225 (10th Cir. 1964).[5]

4. Contrary to the assertion of the dissent, we are not placing the burden of proof on the employees or the Union. Rather, we are holding that the *Company* met its burden of producing sufficient evidence to rebut the prima facie invalidity.

5. The Board has applied the *Essex* analysis in determining whether no-solicitation and no-distribution rules constitute a section 8(a)(1) violation. *See House of Mosaics, Inc.*, 215 N.L.R.B. 704, 88 L.R.R.M. 1428 (1974). Therefore, our holding in *Groendyke* and *Shawnee* is relevant to the facts of this case.

The Regional Director's conclusion that the record evidence did not overcome the presumptively "coercive effect" of the rules stands absolutely unsupported. The substantial and uncontradicted evidence showed that the Company applied the rules lawfully, and that the employees understood them to permit dissemination of Union information during nonwork time. Therefore, we find the Board's decision affirming the Regional Director to be inexplicable and contrary to its own articulated policy. To the detriment of both parties, this error was aggravated by the Board's one-year delay in announcing its decision.

Accordingly, we hold that the Board's decision to set aside the first election is arbitrary, unsupported by substantial evidence, and an abuse of discretion. The petition for review is granted, and the decision and order of the Board is set aside. The cross-petition for enforcement is denied.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent:

The controversy here revolves around a handbook prepared by the Company and distributed to new employees. It was a twenty-one page pamphlet. Under the heading Personal Conduct the handbook set forth rules of employee conduct on Company property. It stated that violation of such rules could subject offenders to termination. One such rule prohibited "distribution of unauthorized leaflets, papers or other materials during working hours on Company property." Under the heading Solicitations another rule stated "solicitations, collections and circulation of petitions of any nature frequently result in misunderstanding. To avoid this possibility only the recognized solicitations for charitable organizations and similar activities specifically approved by the Company will be permitted during working hours." Still another rule prohibited "distribution of unauthorized leaflets, papers or other materials during working hours on Company property."

These rules made it clear that solicitations were not favored by the Company, and the term "working hours" tends to mean all of the period from eight to five, for example. This leaves no room for construction.

## THE DECISION

The Regional Director concluded that in the circumstances described that the extrinsic evidence presented by management did not overcome the force or effect of such written rules. Notwithstanding the fact that the employer presented evidence that approximately four of the employers were advised that solicitation and distribution in violation of the written rules were permitted, such rules remained in the handbook and there was no notice given to *all* employees that such rules had in any way been modified or rescinded. Thus, the Regional Director concluded that such rules permitting only authorized approved solicitations and distributions during working hours constituted the basis upon which the election should be set aside. The solicitations authorized were those which pertain to charitable drives, etc.

The Board adopted the Regional Director's conclusion on the basis that it was

---

The situation here is very close to the one in *Shawnee,* where we pointed out that:
"The record contains no evidence that the rules were ever used to interfere with any union or any organizational activities; . . . or that the rules were adopted for a discriminatory purpose. We see nothing in the record to sustain an inference that these rules ever have been, or ever will be, used in a forbidden manner. It is presumed that a person obeys the law and discharges the obligations imposed on him by law. Imagined possibilities are not enough. A charge of an unfair labor practice must be based on something more than suspicion. Here the only showing is the existence of the rules. In our opinion the mere promulgation of the rules is not per se a violation of the Act."
333 F.2d at 225. In *Groendyke* the record showed that the rule was actively enforced in an unlawful manner to prevent any distribution or solicitation "on Company premises at any time." 530 F.2d at 142. We therefore held the rule a violation of the National Labor Relations Act.

supported on the record as a whole. The question is whether there is substantial evidence in the record considered as a whole to support the Board's finding.

We cannot, of course, consider issues of fact on a de novo basis and choose between conflicting inferences even though we might arrive at a different conclusion. Such a choice is not ours to exercise. *Ann Lee Sportswear, Inc. v. NLRB*, 543 F.2d 739 (10th Cir. 1976); *NLRB v. Tennessee Packers, Inc., Frosty Morn Division*, 379 F.2d 172, 180 (6th Cir. 1967).

The Board in this case determined that since both the no-distribution, no-solicitation rules of American Safety Equipment Corp. prohibited those activities during working hours, rather than working time, that the employees of the corporation had been denied the laboratory conditions essential to a fair representation election. *American Safety Equipment Corp.*, 234 NLRB 501, 1978 CCH NLRB p. 31, 427–8. See also *Tennessee Packers*, supra, 379 F.2d at 180. The majority opinion would have this court hold that the Board's ruling constitutes an abuse of discretion, in that the Board's decision is not supported by substantial evidence in the record as a whole.

## WHAT IS THE EFFECT OF THE RULES ON THE ELECTION?

We must note at the outset that the standards for determining whether an employer has engaged in conduct which interferes with the employees' rights to a noncoercive electoral atmosphere are not as demanding as the standards for determining whether an employer has engaged in an unfair labor practice. As the court stated in *NLRB v. Tennessee Packers, Inc., supra*, "[i]t is not necessary that conduct which interferes with the freedom of choice in an election actually constitute an unfair labor practice." *See* in addition, *Hedstrom Co. v. NLRB*, 558 F.2d 1137, 1151, n. 36 (3rd Cir. 1977) App. 629 F.2d 305 (3rd Cir. 1980); *Independent, Inc. v. NLRB*, 406 F.2d 203, 207–8 (5th Cir. 1969); *NLRB v. Shirlington Supermarket*, 224 F.2d 649, 652–3 (4th Cir. 1955), *cert. denied*, 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801 (1955).

There are indeed a number of cases which hold that a presumptively invalid no-solicitation rule does not constitute an *unfair labor practice* in the absence of a showing that the rule was applied in an invalid manner. However, we do not have a question of unfair labor practice here. Here we are facing the issue of whether no-solicitation/no-distribution rules constituted a violation which was sufficient to void an election which the Union lost, and as a result of which the employees of American Safety Equipment Corp. were not represented by any Union. In order for the Board to find that the laboratory conditions necessary for a fair representation election were not present, it is not, we repeat, necessary that it be shown that the rules were definitely applied in an invalid manner, and thus that the employer committed an unfair labor practice.

It is the duty of the Board to draw the inferences from the facts presented and determine whether the employees' organizational rights had been interfered with so that laboratory conditions were not present at the time of the representation election. In this case the Board determined that since both rules were couched in the same terms, the logical conclusion which could have been reached by the employees of American Safety Equipment Corp. was that solicitation and distribution were banned at all times. In addition, although the Regional Director recognized that four of the company's employees had been advised that solicitation and distribution in violation of the written rules were permitted, the Director noted further that these rules remained the same, and that no notice was given to all of the employees-at-large that the rules had been modified or rescinded. The company had no general policy of discussing or explaining the rules in pre-hire interviews, and it did not, officially or otherwise, notify its large employee force as a whole that the rules were to be applied in a manner inconsistent with their language.

There was some evidence given by the Company that the new employees were told

that the noon hour, for example, was theirs alone, but the Company didn't tell them that in relationship to whether or not there could be solicitation or as to whether or not the rules pertaining to solicitation applied. Those rules were written so that they were final and, indeed, the rules threatened termination in fact.

The four employees to whom the Company revealed that the no-solicitation rules were not applicable were actually management level employees. There is no evidence that they communicated this to employees interested in joining the Union. Therefore, I cannot see any basis for this court accepting their testimony over the strong inferences which are to be drawn from the circumstances surrounding the existence of these rules having to do with solicitation.

In the case of *Allis Chalmers Corp.*, 224 NLRB 1199 (1976), the Board held that the Company's no-solicitation rule constituted an unfair labor practice. In that case there was evidence that no one had ever been replaced for soliciting, that the rule had never been enforced except against an isolated vendor, and the employees did engage in Union solicitation during their break and meal periods. However, the rule was posted during the Union's organization drive and management did not explain to the employees that the rule was not applicable to break and meal periods. The court held that the rule violated the National Labor Relations Act even though a later rule restricted the solicitation ban to working time, because the change was not explained to the employees. If the rule in *Allis Chalmers* is an unfair labor practice, it is clear that the Board did not abuse its discretion in holding in the case at bar that several rules constitutes sufficient grounds to set aside the election. *See also, Bandag, Inc. v. NLRB*, 583 F.2d 765 (5th Cir. 1978); *L.O.F. Glass, Inc.*, 216 NLRB 845 (1975).

In the Board's decision in *Flat River Glass Co.*, 234 NLRB 200, 1978 CCH NLRB p. 31, 651, its holding was that the mere existence of an invalid no-solicitation rule was not sufficient justification for overturning a representation election, but in that case two unions were competing in an election. The Board refused to set the election aside due to the fact that the employer had an invalid no-solicitation rule because there was a lack of evidence that this unlawful rule was applied in a disparate manner to the two competing unions. Thus *Flat River* is distinguishable from our case which involved only one union, and an effort on its part to get recognition.

In *Essex International, Inc.*, 211 NLRB 749, 1978 CCH NLRB p. 34, 563, the Company had three rules which discussed solicitation and distribution. Two of these prohibited solicitation for any cause or distribution of literature during working time. Only one rule prohibited distribution of literature during working hours. The Board decided the employer had made a sufficient showing to rebut the prima facie presumption from the rules' invalidity, and stated:

It is arguable that the no distribution rule, standing alone, is invalid because of its prohibition of distribution during "working hours." However, after considering that rule, together with the Employers' no solicitation rule referring to "working time" and the separate section on Solicitations, which sets forth the Employers' rule against distribution during working time, we are unable to conclude that employees would consider the single reference to working hours to mean something other than working time.

Thus in *Essex* there was mitigating material. The Board also stated that the employer should be allowed to rebut the presumption of the rules' invalidity by presenting extrinsic evidence showing that the rule had not been applied in a manner such as to interfere with the employees' organizational rights. However, the important thing was that the Board relied on the fact that two of three rules used the term "working time" in reaching its decision that the election should not be set aside. The instant case is distinguishable in that both rules used the term "working hours." Hence potential members of the Union could not get any consolation from either of the rules.

The majority opinion appears to rely on the Regional Director's statement in his findings that in enforcing the no-solicitation, no-distribution rules the company had not engaged in conduct which would provide a basis for setting aside the election. That statement is cited in support of the majority's position that there were *no* grounds upon which to set aside the election. However, the Regional Director was referring to specific allegations of misconduct presented by the Union, which the Regional Director held to be unfounded. The Regional Director specifically stated that in the circumstances presented there was no evidence of misconduct. This is not to say, however, that the rules themselves were valid, or that the rules themselves were not grounds for drawing inferences in support of the judgment setting aside the election. The Director found that the rules were invalid and supported the voiding of the election.

The effect of the majority opinion would be to place a burden on the employees, or the Union, to show that the rules were applied to mean "working hours" rather than "working time." The burden of proof is not with the Union, however, but with the employer. The fact remains that the rules prohibited solicitation and distribution during "working hours" and, as such, were presumptively invalid. It was, therefore, the burden of the employer, American Safety Equipment Corporation, to rebut that presumption. *Essex, supra.*

The Regional Director determined in this case that American Safety had not met its burden of overcoming the coercive effect of its written rules. Thus the Director placed the burden where it belonged: on the employer in these conditions.

The Board decided that the evidence that the four employees, three of whom held supervisory positions and one of whom was a personal secretary, believed that the rules were to be applied to mean working time rather than working hours was not sufficient to rebut the prima facie inference of the rules' invalidity. This court should not disturb the Board's ruling and choose its own conclusion.

In the case of *Groendyke Transport, Inc. v. NLRB, supra,* we stated that in order to find that a presumptively invalid no-solicitation or no-distribution rule is valid, the employer must prove unusual circumstances justifying the rule. *See* 530 F.2d at 141. Thus we are not empowered to set aside the Board's finding and conclude on our own that the fact that the four mentioned employees believed the rules were applied to mean working time is sufficient to establish that the rules were harmless. Nor is it possible for us to shift the burden from the employer to rebut the presumption of the rules' invalidity—to the Union to show that the rule was applied in a manner to interfere with the employees' organization rights. Rules of this nature tell a conclusive story. Hence they are presumed to interfere with the employees' organizational rights. It is up to the employer to show otherwise.

In *Ann Lee Sportswear, Inc. v. NLRB, supra,* 543 F.2d at 742, this court said, "that it should only interfere with the Board's findings in the rare instance when the standard [regarding substantial evidence] appears to have been misapprehended or grossly misapplied.".

The fact that both of the rules used the term "working hours" and a resultant restricted meaning existed is bolstered by the fact that there is still another rule prohibiting the soliciting generally and a warning against it. Inasmuch as both of the rules used the term "working hours" and the employees-at-large were not notified that any different meaning or interpretation was intended, the evidence supporting the Board's decision to set aside the election because laboratory conditions were not present surely meets the substantial evidence test inasmuch as it constitutes more than a mere scintilla and connotes such relevant evidence to support a conclusion.

Accordingly the decision of the National Labor Relations Board to set aside the first representation election should be affirmed. Therefore, this court should consider the merits of appellants' second and third issues of this appeal.

The majority opinion would place the burden on the employees or the Union to show the rules were applied to mean "working hours" rather than "working time." The burden of proof is not with the Union, however, but with the employer.

For the reasons stated, I would enforce the Board's order.