Argued and submitted June 8, 2010, reversed and remanded for reconsideration July 13, 2011

ROGUE RIVER EDUCATION
ASSOCIATION/SOUTHERN OREGON
BARGAINING COUNCIL/OEA/NEA,
*Petitioner,*

*v.*

ROGUE RIVER SCHOOL DISTRICT NO. 35,
*Respondent.*

Employment Relations Board
UP1708; A139551

*260 P3d 619*

Barbara J. Diamond argued the cause for petitioner. With her on the briefs was Diamond Law.

Bruce A. Zagar argued the cause for respondent. On the brief were Joan W. Reese and Garrett Hemann Robertson P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Petitioner, the Rogue River Education Association/ Southern Oregon Bargaining Council/OEA/NEA (association), filed an unfair labor practice complaint with the Employment Relations Board (board) against respondent, Rogue River School District No. 35 (district). The association alleged that the district had violated ORS 243.672(1)(g) and, thereby, had committed an unfair labor practice when it stopped paying early retirement benefits to a retired district employee. The district moved to dismiss the association's complaint, asserting that the complaint was untimely under ORS 243.672(3) because the association had filed it more than 180 days after the district's alleged violation. The association countered that its complaint was timely because it was filed within 180 days after the association discovered the alleged violation. The board issued an order dismissing the complaint, reasoning that ORS 243.672(3) does not have a discovery rule and that, even if it does, the 180-day time limit nevertheless began to run when the district stopped paying the early retirement benefits. The association timely sought judicial review of the board's order, arguing that the board had erred in interpreting and applying ORS 243.672(3). As explained below, we agree that the board erred and reverse and remand.

The pertinent facts are undisputed. The association and the district were parties to a collective bargaining agreement from 1998 to 2001. Jewel Allen is a former elementary school teacher for the district, and the association is the exclusive bargaining representative for teachers employed by the district.[1] At the end of the 1999-2000 school year, Allen had completed 14 years of teaching with the district and wanted to take early retirement. However, under the parties' collective bargaining agreement, only teachers who had taught for 15 or more years were eligible to receive early retirement benefits. Nevertheless, the district and the association entered into a memorandum of understanding that

---

[1] ORS 243.650(8) defines "exclusive representative" as "the labor organization that, as a result of certification by the board or recognition by the employer, has the right to be the collective bargaining agent of all employees in an appropriate bargaining unit."

allowed Allen to receive early retirement benefits notwith-standing her failure to meet the 15-year eligibility require-ment. Under that agreement, Allen was permitted to retire from her teaching position and receive up to seven years of early retirement benefits, beginning July 1, 2000.

Allen retired at the end of the 1999-2000 school year and began receiving her early retirement benefits from the district, including a monthly stipend and district-paid medical insurance. She received those benefits during the 2000-01, 2001-02, and 2002-03 school years. In the fall of 2003, the district had a teaching vacancy, and Allen agreed to return to teaching to help the district cover the vacancy. The district could not find a replacement teacher to complete the school year, and, at the district's request, Allen entered into a temporary teacher contract with the district for the period from November 2003 to June 2004. During that period, Allen was a member of the bargaining unit for teachers repre-sented by the association and was not paid early retirement benefits. After completing the temporary contract, Allen resumed her status as a retiree and began to again receive early retirement benefits. She subsequently received those benefits for the 2004-05, 2005-06, and 2006-07 school years. Accordingly, by the end of the 2007 school year, she had received six years of early retirement benefits.

In mid-June 2007, the district notified Allen that it would stop paying early retirement benefits to her as of June 30, 2007. Allen contacted the district and sought to have it pay her a seventh year of early retirement benefits, which she believed that she was entitled to be paid, to no avail. Allen notified a representative of the association on or about December 1, 2007, that her early retirement benefits had been terminated. The representative unsuccessfully sought to get the district to reinstate Allen's benefits. The associa-tion thereafter filed an unfair labor practice complaint on May 6, 2008—fewer than 180 days after the association had been notified by Allen that the district had stopped paying early retirement benefits to her—that alleged that the dis-trict had violated ORS 243.672(1)(g) by failing to pay Allen

her agreed-upon retirement benefits.[2] The district moved to dismiss the association's complaint on the ground that it was untimely under ORS 243.672(3).

The board agreed with the district and issued an order dismissing the association's complaint. The board began its analysis by focusing on the text of ORS 243.672(3), which provides, in part, that "[a]n injured party may file a written complaint with the Employment Relations Board not later than 180 days following the occurrence of an unfair labor practice." In light of that language, the board concluded that the statute does not embody a discovery rule.

The board accordingly concluded that the association's complaint was untimely because it had been filed more than 180 days after the district had stopped paying early retirement benefits to Allen, which was when the alleged unfair labor practice had occurred. The board acknowledged, however, that it had applied a discovery rule under ORS 243.672(3) in some of its earlier cases. Hence, the board went on to conclude that, even if ORS 243.672(3) had a discovery rule, the association's complaint would still be untimely because Allen had known more than 180 days before the complaint was filed that the district had stopped paying her early retirement benefits and her knowledge was imputable to the association.

The threshold issue on review is whether the board erred in concluding that ORS 243.672(3) does not contain a discovery rule. *See* ORS 183.482(8)(a) (court reviews contested case orders for legal error). The Supreme Court has explained that "[a] discovery rule cannot be assumed, but must be found in the statute of limitations itself." *Huff v. Great Western Seed Co.*, 322 Or 457, 462, 909 P2d 858 (1996). As we will explain, we conclude that ORS 243.672(3) has a discovery rule.

As noted, ORS 243.672(3) provides that "[a]n injured party may file a written complaint with the Employment

_____

[2] ORS 243.672(1)(g) provides that "[i]t is an unfair labor practice for a public employer or its designated representative to * * * [v]iolate the provisions of any written contract with respect to employment relations."

Relations Board not later than 180 days following the *occurrence* of an unfair labor practice." (Emphasis added.) The word "occurrence" is not defined in the statute, and dictionary definitions of the word are sufficiently varied that it is unclear whether the legislature intended ORS 243.672(3) to embody a discovery rule. *See Huff*, 322 Or at 462 (noting that dictionary definitions of the word "occurrence" failed to confirm whether the legislature intended ORS 659.121(3) to include a discovery rule). *But cf. Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 231-32, 26 P3d 817 (2001) (concluding that the definition of the word "occurs" in *Webster's Third New Int'l Dictionary* 1561 (unabridged ed 1965) "describes the happening of an event, not its eventual discovery").

However, the legislative history of the Public Employees Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, provides insight into the issue. ORS 243.672(3) was enacted as part of PECBA by House Bill (HB) 2263 (1973). *See* Or Laws 1973, ch 536, § 4. HB 2263 was introduced at the request of the Governor's Task Force on Collective Bargaining in the Public Sector, which had been formed in 1972 to address a perceived need to adopt a comprehensive public sector collective bargaining law for the state. Marcus R. Widenor, *Public Sector Bargaining in Oregon: The Enactment of the PECBA* 16, 18 (Labor Education and Research Center, University of Oregon, LERC Monograph Series No. 8, 1989). Before submitting its proposed bill to the legislature, the task force had surveyed public collective bargaining statutes from other states and had heard testimony from representatives of labor and management. *Id.* at 16. It proposed a comprehensive bill modeled on the National Labor Relations Act (NLRA), 29 USC §§ 151-169 (1971), which ultimately was enacted as PECBA. *See, e.g.*, Widenor, *Public Sector Bargaining in Oregon* at 16-17; *Elvin v. OPEU*, 313 Or 165, 175 n 7, 177, 832 P2d 36 (1992) (noting that PECBA "was adopted to model the NLRA" and that, although PECBA "was not identical to the NLRA, PECBA was very similar in structure and language, as well as purpose").

Our review of the legislative history of HB 2263, while not exhaustive, has not revealed any discussion of the

intended meaning or operation of the limitation period in ORS 243.672(3). However, because PECBA was modeled after the NLRA, cases interpreting the federal counterpart to ORS 243.672(3)—particularly those cases decided before PECBA was enacted in 1973—bear on the intended meaning of ORS 243.672(3). *See, e.g., Elvin*, 313 Or at 177, 179 ("[W]e interpret PECBA by looking to how the NLRA was interpreted before 1973[.]"). Accordingly, we look to pre-1973 federal cases interpreting 29 USC section 160(b), the parallel NLRA statute of limitation, for guidance on the intended meaning of ORS 243.672(3).

In *NLRB v. Shawnee Industries, Inc.*, 333 F2d 221 (10th Cir 1964), the Tenth Circuit considered whether an instrument repairman named Talbot had timely filed an unfair labor practice charge under the NLRA against Shawnee Industries. Section 160(b) provides that a person may file a charge of an unfair labor practice with the National Labor Relations Board (NLRB); however, "no complaint shall issue based upon any unfair labor practice *occurring* more than six months prior to the filing of the charge with the [NLRB]."[3] (Emphasis added.)

The court reviewed the evidence that had been presented to the NLRB on whether Shawnee Industries had refused to hire Talbot because of an antiunion hiring policy and then explained:

> "We recognize the principle that events occurring outside of the six-month limitation period of [section 160(b)] 'may be utilized to shed light on the true character of matters occurring within the limitations period'; and *we agree with the Board that the limitation period begins when the facts of a discriminatory hiring policy first become known to an applicant.* The difficulty is that no evidence established discrimination against Talbot within the limitation period."

*Shawnee Industries, Inc.*, 333 F2d at 224 (footnote and citation omitted; emphasis added). From that discussion, it is evident that the Tenth Circuit understood section 160(b) to embody a discovery rule.

---

[3] The text of 29 USC section 160(b) relating to the limitation period for the filing of an unfair labor practice charge has remained unchanged since at least 1958.

Decisions and orders issued by the NLRB before 1973 similarly reflect an understanding that section 160(b) incorporates a discovery rule. *See, e.g., Russell-Newman Manufacturing Company, Inc.*, 167 NLRB 1112, 1115 (1967) (concluding that a management memorandum implementing a change to an employee work-performance grading system did "not become effective nor [could] the employees be bound by it until such time as they are informed of its contents"); *L. C. Cassidy & Son, Inc.*, 185 NLRB 920 (1970).

For example, in *L. C. Cassidy & Son*, the NLRB addressed whether a union and the employees whom it represented had timely filed an unfair labor practice charge over the employer's refusal to pay sick pay. 185 NLRB at 926. The employer had had a "practice and custom" of paying sick pay to sufficiently tenured employees under certain circumstances. However, the employer discontinued that practice, without notice to the union, after the parties had entered a new collective bargaining agreement that did not provide for sick pay. The employer contended that the unfair labor practice charge was untimely under section 160(b) because it had been filed more than six months after the parties had entered the new collective bargaining agreement, which, according to the employer, had put the union and the employees on notice that the employer would no longer pay sick pay. The NLRB disagreed, concluding that, "in the absence of other circumstances which would make [the employer's] course of action plain, *the employees and their representative were entitled to clear notice of [the employer's] adverse action before the statute of limitations would begin to run." Id.* (emphasis added).

It is apparent that, before the legislature adopted ORS 243.672(3) in 1973, the parallel statute of limitation in the NLRA had been interpreted to include a discovery rule. Furthermore, by the late 1970s, that understanding of section 160(b) had become well recognized by the federal courts. As the Eighth Circuit explained in *AMCAR Division, ACF Industries, Inc. v. NLRB*, 592 F2d 422, 430-31 (8th Cir 1979),

"[s]everal circuits, including this one, have recognized that the six[-]month statute of limitations does not start to run until the injured party knows or should have known that his statutory rights were violated. *Metromedia, Inc. v.*

*NLRB*, 586 F.2d 1182 (8th Cir. 1978); *NLRB v. Allied Products Corp., Richard Bros. Div.*, 548 F.2d 644, 650 (6th Cir. 1977); *Wisconsin River Valley Dist. Council v. NLRB*, 532 F.2d 47, 53 (7th Cir. 1976); *NLRB v. Shawnee Industries, Inc.*, 333 F.2d 221, 224 (10th Cir. 1964)."

In light of the history of federal court and NLRB interpretations of section 160(b), we are persuaded that, in enacting a bill modeled on the NLRA, the 1973 Legislative Assembly intended the limitation period in ORS 243.672(3) to function in the same manner as its federal counterpart. Accordingly, we conclude that ORS 243.672(3) incorporates a discovery rule, which means that the limitation period begins to run when a public employee, labor organization, or public employer knows or reasonably should know that an unfair labor practice has occurred.

However, that conclusion does not end our analysis in this case. We must also address the board's alternative conclusion that, even if ORS 243.672(3) has a discovery rule, the association's complaint was nevertheless untimely because Allen's knowledge of the termination of her early retirement benefits is imputed to the association. The board relied on its decision in *Oregon AFSCME Council 75 v. Morrow County*, 17 PECBR 17 (1996), as support for that conclusion. In *Morrow County*, a labor organization alleged in an unfair labor practice complaint that the county had not provided annual raises to certain employees, which was inconsistent with the county's past practice and, thus, constituted a unilateral change in employment conditions that violated ORS 243.672(1)(e). The labor organization argued that its complaint was timely under the discovery rule. The board disagreed:

"It would derogate the basic purposes of the limitation period to toll its running, after a change in working conditions is implemented and its effects are fully apparent, simply because the labor organization leadership did not become aware of the change for some period of time. To effectuate the purposes of ORS 243.672(3), *we find that when the effects of a change are manifest to the employees, the exclusive representative must be presumed to be on notice that the change occurred. To put it in terms of our discovery*

*rule, the union 'reasonably should have known' of the change at that time."*

*Id.* at 19 (emphasis added). As the board explained, it relied on a presumption of knowledge by the labor organization rather than deciding when, in fact, the organization reasonably should have known of the alleged unfair labor practice.

Here, the board concluded that the principle that it had applied in *Morrow County* also applies in this case and, thus, that Allen's knowledge of the termination of her early retirement benefits must be imputed to the association—even though Allen was no longer a member of the association—because "[t]he Association entered a contract with the District and is bound to monitor it just as it would any other contract." As the following discussion explains, we disagree with the board's understanding of how the discovery rule in ORS 243.672(3) works.

As noted, the limitation period in ORS 243.672(3) begins to run when the injured party knows or reasonably should know that an unfair labor practice has occurred. The board reasoned that, as a matter of law, the association's duties as the exclusive labor representative require it to monitor the actions of the district and, hence, that, in the absence of evidence that the unfair labor practice had been purposely concealed by the district, the association is presumed to know whatever an employee whom it represents knows about the district's actions. We conclude, however, that the board erred in automatically imputing Allen's knowledge to the association. That is because, in light of how the discovery rule has been applied under other Oregon statutes and under section 160(b), we are persuaded that the determination of whether and when an injured party reasonably should have known of an unfair labor practice presents a factual question that requires case-specific analysis. The board failed to make the required factual determination here and, as a consequence, erred in its application of the discovery rule.

The Supreme Court's explanation in *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 60 P3d 535 (2002), of the operation of the discovery rule in ORS 12.110(4) is helpful to our understanding of the discovery rule in ORS

243.672(3).[4] The court explained that the "discovery standard in ORS 12.110(4) functions to determine *when* a reasonably careful plaintiff should have discovered an injury[.]" *Id.* at 123 (emphasis in original). The resolution of that question requires a factual determination, and, "if the facts satisfy the 'should have been discovered' standard under that statute, then the period of limitations commences notwithstanding the plaintiff's complete failure to acquire actual knowledge of the injury." *Id.* at 123-24. The court further explained that, even if a plaintiff discovers facts "that only would cause a reasonable person to inquire whether legally cognizable harm has occurred, the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Id.* at 123. From the court's explanation, it is evident that, under the discovery rule in ORS 12.110(4), the determination of whether and when a person reasonably should have known of an injury is a case-specific inquiry that requires an evaluation of the facts available to the injured party and an assessment of what a reasonable inquiry by that party would have uncovered during the period before the complaint was filed.

Federal courts and the NLRB have applied the discovery rule in section 160(b) in a manner similar to the Supreme Court's application of the rule in *Greene*. As the NLRB has explained, under section 160(b), knowledge of an unfair labor practice "may be imputed where the filing party would have discovered the conduct in question had it exercised reasonable or due diligence." *M & M Automotive Group, Inc.*, 342 NLRB 1244, 1246 (2004). *See also NLRB v. Dynatron/Bondo Corp.*, 176 F3d 1310, 1317 (11th Cir 1999) (limitation period under section 160(b) begins to run "[w]hen the unfair practice has in fact occurred * * * and the union has the facts necessary to determine that it has occurred" (citation omitted)). And, as with the Supreme Court's

---

[4] ORS 12.110(4) provides, in relevant part, that "[a]n action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date *when the injury is first discovered or in the exercise of reasonable care should have been discovered.*" (Emphasis added.)

application of the discovery rule in *Greene*, federal courts and the NLRB have treated the determination of whether and when an injured party should reasonably have known of an unfair labor practice as requiring a case-specific factual determination.[5] Furthermore, both the federal courts and the NLRB have explained that, under section 160(b), an employee's knowledge of the occurrence of an unfair labor practice is not *automatically* imputed to the employee's labor organization. *See, e.g., Stone Boat Yard v. NLRB*, 715 F2d 441, 445 (9th Cir 1983) (concluding that knowledge possessed by union members was not attributable to union because there was no evidence in the record that the members were agents of the union); *Michael Konig*, 318 NLRB 337 (1995). Rather, the question of whether an employee's "knowledge is imputed to [his or her] bargaining representative for purposes of determining when the [section 160(b)] limitations period commences depends on the factual context." *Id.* at 339.

Here, the association was the exclusive representative of teachers employed by the district and a party to the memorandum of understanding between the association and the district, and, hence, it was an injured party that was authorized to pursue an unfair labor practice claim against the district for an alleged breach of the memorandum.[6] Accordingly, on remand, the board's task is to apply the discovery rule in ORS 243.672(3) to resolve the factual question

---

[5] *See, e.g., East Bay Automotive Council v. NLRB*, 483 F3d 628, 634 (9th Cir 2007) (concluding that substantial evidence supported the NLRB's finding that labor organization "did not have actual or constructive knowledge" of unfair labor practices); *Michael Konig*, 318 NLRB 337 (1995) (concluding that evidence was insufficient to establish that exercise of reasonable diligence by labor organization would have led to earlier discovery by the organization of unfair labor practice); *Moeller Bros. Body Shop, Inc.*, 306 NLRB 191 (1992) (concluding complaint to be untimely because facts demonstrated that labor organization, exercising reasonable diligence, should have discovered unfair labor practices more than six months before it filed its complaint).

[6] *See* ORS 243.672(3); *Ahern v. OPEU*, 329 Or 428, 434, 988 P2d 364 (1999) ("To achieve the goals of PECBA, ORS 243.672(3) provides that 'an injured party'— that is, anyone who has been injured by an unfair labor practice—may file a complaint with ERB. That statute does not limit ERB's authority over unfair labor practices to complaints brought by employers and employees." (Emphasis omitted.)); *McMinnville Education Association and Mid-Valley Bargaining Council v. McMinnville School District #40*, 16 PECBR 107, 124 (1995) (labor organization had authority to enforce expired collective bargaining contract providing for early retirement benefits).

of whether *the association* knew or reasonably should have known more than 180 days before it filed its complaint that the district had stopped paying early retirement benefits to Allen.[7] Based on that finding, the board can properly assess whether the association's complaint was untimely.

Reversed and remanded for reconsideration.

---

[7] Whether a public employee, labor organization, or public employer is authorized under ORS 243.672(3) to file an unfair labor practice complaint as an "injured party" depends on the nature of the alleged unfair labor practice. *See* ORS 243.672(1) - (2). For example, if a public employer interferes with an employee's right to form, join, or participate in a labor organization, both the employee and the labor organization could bring a complaint as an "injured party" under ORS 243.672(1)(a) (it is an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662" to form, join, and participate in the activities of labor organizations). In contrast, a labor organization alone may be authorized to bring a complaint for a public employer's alleged violation of a collective bargaining agreement, ORS 243.672(1)(g), depending on the terms of the agreement and whether the employee can establish that the labor organization has breached its duty of fair representation regarding the violation. *See, e.g., Vanorman v. City of Portland,* 15 PECBR 668, 670 (1995) (concluding that the employee did not have standing to bring an unfair labor practice complaint under ORS 243.672(1)(g) because the labor organization had "the sole authority under the contract to advance a grievance to arbitration" and the employee had not established "that the union [had] breached its duty of fair representation").

Accordingly, if multiple parties qualify as injured parties authorized to pursue an unfair labor practice complaint arising from particular conduct, the effect of the discovery rule in ORS 243.672(3) can vary depending on which party brings the complaint. *Cf. Ahern,* 329 Or at 434 (explaining that anyone "who has been injured by an unfair labor practice * * * may file a complaint with ERB"). In other words, under the discovery rule, an employee's complaint might be untimely while the affected labor organization's complaint might not be, and vice versa. That is because, where an unfair labor practice affects multiple parties, the discovery rule will be applied to determine whether the party making the complaint knew or reasonably should have known of the unfair labor practice more than 180 days before the party filed the complaint. *See* 244 Or App at 190-93 (explaining application of the discovery rule in ORS 243.672(3)).